ELPLOYERS' LIABILITY ASSURANCE CORPORATION (Limited), Appellant, v. EMPLOYERS' LIABILITY INSURANCE COMPANY, of the United States, and Others, Respondents.

*Trade-marks and names — a party not entitled to the exclusive use of the term "Employers' Liability" — a corporation doing business in this State without a license, and using a title likely to confuse, will be enjoined from doing business here — what is doing business in this State.*

A foreign corporation, known as Employers' Liability Assurance Corporation (Limited), incorporated in Great Britain in 1880, and doing business in the State of New York in compliance with its laws, brought an action to restrain the use of the term "Employers' Liability" by a corporation, known as Employers' Liability Insurance Company, of the United States, incorporated in the State of New Jersey in 1890, engaged in the same business, that of insuring employers against liability for accidents to employees, not licensed to do business in the State of New York, and which had been refused such license by the superintendent of the insurance department upon the ground that the similarity of its name with that of the plaintiff would create confusion.

*Held,* that the name in each case was descriptive generally of a well-known branch of the insurance business.

That the plaintiff was not entitled to its exclusive use, and that the court would not interfere upon that ground, although such use might deceive or mislead customers of the plaintiff.

That as it appeared. however. that the defendant had, without authority, done business in the State of New York, and that this had led to some confusion and consequent slight damage to the plaintiff, the court would restrain the defendant from doing business in this State.

That where the defendant's agent sought applications for insurance in New York, a policy was thereafter executed by the officers of the defendant in New Jersey, and the policy was subsequently delivered to the applicant in New York, it must be deemed that the defendant was doing business in the State of New York.

APPEAL by the plaintiff, the Employers' Liability Assurance Corporation (Limited), from a judgment, entered in the office of the clerk of the city and county of New York on the 5th day of February, 1891, dismissing its complaint upon the merits after a trial at the New York Special Term by the court.

*W. A. Butler*, for the appellant.

*H. Wallis*, for the respondents.

VAN BRUNT, P. J.:

The plaintiff in this action was and is a corporation duly incorporated and existing under and by virtue of the laws of the Kingdom of Great Britain and Ireland, having and exercising the power of carrying on the business of insurance. The said corporation has been in existence ever since the year 1880, and has carried on its business not only in London, England, where its principal office is established, but also in other parts of the above-named kingdom and other kingdoms of Europe and Australia and in the United States since 1886.

The business of the plaintiff is the insurance of employers against liability for accidents to persons in their employ, which business it originated in 1880; and it has become greatly extended and is carried on by a large number of agents or managers of the various branches of the plaintiff's corporations in foreign countries. The authorized capital of the plaintiff is £500,000, of which £100,000 has been paid in in cash, and the available assets of the corporation amount to about three hundred thousand pounds.

The plaintiff has on deposit with the insurance departments of the States of New York and Massachusetts for the payment of policy-holders in the United States, $650,000. It has fully complied with the laws of the State of New York entitling it to do business therein, and also with the laws of the other States of the United States in which it does business, and employs capital and assets on such business in the United States amounting to upwards of eight hundred and forty thousand dollars.

In the year 1890 the defendant was duly incorporated in the State of New Jersey under the name of the Employers' Liability Insur-

ance Company of the United States, and prior to the commence- ment of this action opened an office at No. 9 Pine street, in the city of New York, for the purpose of the transaction of business, and issued to persons and firms in New York forty or more policies upon applications, some of which, at least, if not all, were received at their office in Pine street. The defendant corporation made an application to the department of insurance of New York for a license to do business in the State of New York under the name of the Employers' Liability Insurance Company of the United States, which was refused upon the ground of the similarity of name between that of the defendant and that of the plaintiff, who had already been licensed to do business within this State. The plaintiff thereupon commenced this action claiming an exclusive right to the use of the name "Employers' Liability" in connection with the insurance busi- ness, and asking that the defendants be restrained from using the said name or title.

The defendants answered admitting most of the foregoing facts, but denying the right of the plaintiff to the exclusive use of the term "Employers' Liability." Upon the trial the complaint was dismissed, and, from the judgment thereupon entered this appeal is taken.

We are of the opinion that the court below was correct in refusing a general injunction against the defendant in this action, prohibiting it from the use of the term "Employers' Liability" upon the ground that this term is a descriptive term used generally to designate a certain well-known branch of the insurance business. But it is claimed that, wholly irrespective of any question of exclusive prop- erty in the name, the plaintiff was entitled to protection against any such appropriation as would interfere with its business by inducing the public to suppose that a new company trading under the same was the original plaintiff corporation ; that it was not necessary that fraud or evil practice should be shown if the fact is made to appear that the use of a trade-mark or corporate name lawfully possessed and enjoyed by a trading company is so used by a competitor as to deceive or mislead dealers to the prejudice of the corporation law- fully using the name, equity will protect by injunction. And our attention is called to certain cases, among which are *McLean* v. *Fleming* (96 U. S., 245), and *Goodyear Company* v. *Goodyear Rubber*

*Company* (128 id., 598). But we think that an examination of those cases is fatal to this claim. The rule is there expressly recognized that exclusive right to use a term descriptive of a character of busi-- ness cannot be acquired, and the evidence in this case shows that the term " Employers' Liability " was in common use in respect to this class of insurance.

But the attention of the court was called, by the requests to find,. upon the part of the plaintiff, to another branch of the case, and that was that the defendant was doing business in defiance of the prohibi-- tion of the law of the State of New York. No foreign insurance company can, nor can an agent of any such company, lawfully do· business within this State until either it or he has been duly licensed to do so by the superintendent of the insurance department. Such superintendent is authorized, for certain causes, to refuse permission to any company or association applying to be permitted to transact the business of insurance in this State, and for other causes he is· required to refuse such permission. He is required to refuse such permission when a foreign company or association. proposes to do· business under a name which, in his judgment, is so nearly similar· to the one already in use as to lead to confusion or uncertainty on the part of the public. The defendant applied to the superin- tendent of the insurance department for permission to do business. within the State of New York ; and it is apparent, from the evi-- dence of the witness McRae (although he did at first swear that there had been no refusal, and that the superintendent did not issue· the permission only because he was too busy), that such permission had been refused upon the ground of similarity of names ; because· as soon as he saw that there was a chance of his being confronted with the superintendent in person, he admitted that the superin- tendent had raised the point that the defendant must alter its name, which it did subsequent to the commencement of this action.

The making out of policies in Jersey City upon applications· received in New York, and the delivery of such policies to the· assured in New York, was a clear violation of the laws of this State. The place where the policies are written out and signed was not the· place where the business was done. The business is certainly done· where the policy is delivered and becomes operative, and some part of it may also be done where applications are made and accepted..

Notwithstanding the subterfuges resorted to by the defendant, its methods were so plain a violation of our laws that it has ceased even attempting to resort to them upon the mere recommendation (as it is termed by the witness McRae) of the superintendent of the insurance department.

The defendant thus being, at the time of the commencement of this action, in the transaction of business in this State in defiance of our laws, any person or corporation who was in any manner injured by these unlawful acts had a right to apply to the court to prevent a continuance of the injury. It is true that the evidence on the subject of special injury in the case at bar was slight. But the facts proven show that the defendant had issued forty or more policies in New York, and that the plaintiff and the defendant were the only companies using similar names; that confusion had arisen and might arise; and that the superintendent of the insurance department, because he believed that such would be the case, had refused a license to the defendant.

Under such circumstances the court will, upon slight evidence of special injury, protect a party who has complied with our laws, enacted for the protection of the public, from an injury which has arisen from the acts of a party done in direct violation of those laws.

It is true that the counsel for the respondent criticises with great severity the testimony offered upon the part of the plaintiff to show that parties had been misled by the similarity of the names of these companies. But we think, upon a reading of that testimony, it shows that there was an evident mistake in one case; and how many other of the persons insured by the forty policies issued in this State (we say issued in this State, because they were delivered to parties in this State) were misled, we do not know, and it is not in the power of the plaintiff to show.

The testimony of the witness McRae is, so far as it tended to sustain any claim made upon the part of the defendant whose agent and servant he was, entirely unreliable, because he evidently was willing to swear to whatever was necessary in order to protect the defendant. The witness, for instance, is asked: " Were you not aware of the provision of law prohibiting the doing of business in New York State by a company that has not been admitted in New

York State? He answers: "I don't know the law exactly. Q. Had'nt you been informed of that law? A. No."

And yet he is the man who immediately afterwards swears that he signed the necessary papers making the application to the insurance department for permission to do business in the State of New York.

We think that, under all these facts, the plaintiff was entitled to some relief, namely, to an injunction restraining the defendant from attempting to do any business within the State of New York.

This conclusion necessarily leads to a reversal of the judgment appealed from and the ordering of a new trial, with costs to the appellant to abide the event.

Daniels, J., concurred.

Judgment reversed and new trial ordered, with costs to the appellant to abide the event.